McFarland, J.,
delivered the opinion o-f the court:
This was an issue of devisavit -vel n-on to try the- validity o-f the will of ¥m. Gibbons. It was, by consent, submitted to Judge Hoyle, without the intervention of a jury, with *31 the further agreement that “in case of appeal to the supreme court, by either party, the appellate court shall hear and determine the cause on the second presentation, in the same manner and under the same rule as equity cases are heard and determined in said court on a general appeal, and said appellate court shall render such judgment as the court below ought to have rendered.” This agreement does not control the principles upon which the cause is is to be heard in this court, at least, so as to change the rule as to the effect of the judgment below. AVe give to the finding of the facts by the circuit judge, the same effect we would give to the finding of a july; the same reasons apply in favor of the finding of the judge where a jury is waived. ITe sees and hears the witnesses, and has the same opportunity of forming correct conclusions upon the facts that a jury would have.
The judgment of the court below was in favor of the validity of the will. It is argued that, upon the evidence set out in the bill of exceptions, we should pronounce a judgment setting the will aside, as having been obtained by fraud and undue influences.
There are some suspicious circumstances attending the case, but looking to the entire record, we are of opinion that the evidence is amply sufficient to' support a verdict of a jury in favor of the will. Gibbons -was an old man at the time of making his will, perhaps seventy years old, and had never been married. The principal devisee was one Lucinda Bell, a mixed blooded woman, the daughter of a mulatto woman, but herself very nearly white. There is some evidence going to show that Lucinda Bell was, as the testator believed she was, his child. He had, at one time, for many years, lived or stayed a great part of the time about the house of her mother, and for awhile Lucinda Bell kept house for the testator at his own home, and they treated each other affectionately.
A brother of the testator came to live at his honse, and *32 Lucinda Bell left and went to a cabin near by; and about a month or two before his death, the testator went and staid with said Lucinda Bell and one John Johns, with whom Lucinda Bell maintained improper relations, and during this time the will was made. But the testator is fully pro-yen to have been in the full possession of his faculties, which were sufficient for testamentary purposes, and a man of strong will. Lie sent for his attorney, and himself gave instructions for the making of his will. After-wards, in about a Aveek, his attorney returned, Avhen the will Avas written and executed, and Avitnessed by a number of witnesses, among them the testator’s attorney, and also his physician, shoAvn to be a man of high character. It is fully proven that the testator expressed himself strongly as to his reasons for doing so and for changing his former will, by which he had given his property principally to his brother.
There is nothing to sLoav any effort made at the time to influence him, and the eAÚdence of any preAdous effort is Arery slight. On the contrary, the proof, goes to show that the making of the will in this maimer Avas the testator’s own settled purpose. It seems he made a deed subsequently, and on the day he died, for part of his land to John Johns. The question whether this deed was obtained by fraud is not involved in this case, except as it may incidentally bear upon the validity of the will. A discussion of the facts at length would be unprofitable. We have carefully considered the testimony and the argument submitted, and conclude we cannot disturb the judgment of the circuit court.
Let it be affirmed.